UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                    )
TRANSAMERICA LIFE INSURANCE         )
COMPANY and WESTERN RESERVE         )
LIFE ASSURANCE CO. OF OHIO,         )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )    C.A. No. 09-470 S
                                    )
JOSEPH CARAMADRE; RAYMOUR           )
RADHAKRISHNAN; ESTATE PLANNING      )
RESOURCES, INC.; ADM ASSOCIATES,    )
LLC; HARRISON CONDIT; EDWARD        )
MAGGIACOMO, JR.; and FORTUNE        )
FINANCIAL SERVICES, INC.,           )
                                    )
          Defendants.               )
_____    )
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

I. Background

Joseph Caramadre's stranger-initiated annuity transaction ("STAT") schemes have been described at length not only by this Court, but also by the First Circuit Court of Appeals and the Rhode Island Supreme Court.[1] This Memorandum and Order assumes that the reader is familiar with Caramadre's STAT scheme, as

---

[1] See, e.g., Caramadre v. Transamerica Life Ins. Co., 847 F. Supp. 2d 329 (D.R.I. Feb. 7, 2012); Western Reserve Life Assurance Co. of Ohio v. ADM Associates, Inc., 737 F.3d 135 (1st Cir. 2013); Western Reserve Life Assurance Co. v. ADM Associates, Inc., 116 A.3d 794 (R.I. 2015).

well as the criminal charges and civil litigation it has generated.

Plaintiffs originally brought seven separate civil cases which have been consolidated into one action, with Plaintiffs' Consolidated Complaint (ECF No. 186) as the operative complaint. Defendants Caramadre and ADM Associates, LLC ("ADM") responded with answers and counterclaims. There are currently three motions pending before the Court: (1) Defendants Caramadre and ADM's Motion to Reconsider the Court's July 12, 2016 Order regarding their untimely response to Plaintiffs' Motion for Partial Summary Judgment (ECF No. 227); (2) Plaintiffs' Motion for Partial Summary Judgment (ECF No. 212); and (3) Plaintiffs' Motion for Prejudgment Attachment of Defendant Joseph Caramadre's Membership Interest in ADM and for Preliminary Injunction Preventing Caramadre from Transferring Assets of ADM or his Interest Therein (ECF No. 187). For the reasons that follow, Defendants' Motion to Reconsider is DENIED, Plaintiffs' Motion for Partial Summary Judgment is GRANTED, and Plaintiffs' Motion for Prejudgment Attachment and a Preliminary Injunction is held pending additional briefing.

II. Discussion

    A. Motion to Reconsider

    On July 12, 2016, this Court entered an Order (ECF No. 226) denying Defendants Caramadre and ADM's Motion requesting leave to file a memorandum of law in support of its opposition to Plaintiffs' Motion for Partial Summary Judgment.  The Order noted that the Court would disregard the memorandum that had been untimely filed by ADM.  The Court also entered a text order on July 12 granting Plaintiffs' Motion to Strike Caramadre's memorandum in support of his opposition for the reasons set forth in the Order.  Defendants Caramadre and ADM subsequently filed a Motion to Reconsider this Order,[2] in which Caramadre states that he does not disagree with the Court's decision to disregard the memoranda that were not timely filed, and acknowledges that the Court was "on proper legal grounds to disregard the late motions." (Mot. to Recons. 1, 2, ECF No. 227.)  Caramadre then requests that the Court consider punishing ADM's attorney for his failure to timely file the response in

---

[2] The Court notes that the Motion to Reconsider is purported to have been filed on behalf of both Caramadre and ADM.  As Plaintiffs' point out, however, Caramadre is a pro se litigant who may not represent ADM because he is not a licensed attorney. (Obj. to Mot. to Recons. 2, ECF No. 228.)  Caramadre's license to practice law was suspended by the Rhode Island Supreme Court until further order of that Court.  In re Caramadre, 86 A.3d 388, 389 (R.I. 2014).

opposition to Plaintiffs' motion because, he contends, the attorney misled him to believe that the responsive documents would be filed by the June 15, 2016 final deadline set by the Court in a Text Order entered on June 8, 2016. (Id. at 3-5.)

Caramadre has not provided any basis on which the Court could or would reconsider its July 12 Order and decision to disregard the responsive memoranda filed by both Caramadre and ADM. The Court was well within its discretion to enforce the final deadline that it set after it had granted several extensions, and the Court's reasoning for enforcing the final deadline is articulated in detail in its Order. (See ECF No. 226.) The Motion to Reconsider is DENIED.

B. Motion for Partial Summary Judgment

Plaintiffs argue that they are entitled to summary judgment on three of the seventeen counts in the Consolidated Complaint, as well as on all five of Caramadre's counterclaims and all four of ADM's counterclaims. (Mot. for Partial Summ. J. 1, ECF No. 212.) Summary judgment may enter on any claim for which the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact "exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Taylor v. Am. Chemistry

4

Council, 576 F.3d 16, 24 (1st Cir. 2009) (internal quotation marks and citation omitted).   The Court must consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. Dávila v. Corporación de Puerto Rico Para La Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007).

Plaintiffs' motion is unopposed because Defendants Caramadre and ADM failed to timely file a response. (See July 12, 2016 Order, ECF No. 226.)   Pursuant to the local rules of civil procedure for the District of Rhode Island, Plaintiffs' Statement of Undisputed Facts shall be deemed admitted because Defendants did not file a Statement of Disputed Facts. LR Cv 56(a)(3).   Federal Rule 56 is clear, however, that this Court must still analyze Plaintiffs' motion to determine whether they are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e)(3); Sanchez-Figueroa v. Banco Popular de Puerto Rico, 527 F.3d 209, 212 (1st Cir. 2008) (noting that an unopposed motion for summary judgment "does not automatically give rise to a grant of summary judgment" because "the district court still must consider the plaintiff[s'] [claims] based on the record properly before [it] . . . .") (quoting Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006))).

1. Plaintiffs' Claim for Civil Liability pursuant to R.I. Gen. Laws § 9-1-2 as to Defendants Caramadre and Radhakrishnan

Plaintiffs argue that they are entitled to summary judgment on their claims in Count V that Caramadre and Radhakrishnan are civilly liable for their criminal conduct because Caramadre and Radhakrishnan have admitted to committing mail fraud, wire fraud, and identity fraud, obtaining signatures by false pretenses and forgery, and conspiring to defraud and obtain significant sums of money from insurance companies in violation of state law. (Pls.' Mem. in Supp. of Mot. for Partial Summ. J. ("Pls.' Mem.") 8-10, ECF No. 212.) Plaintiffs' Statement of Undisputed Facts ("SUF"), deemed admitted by Defendants' failure to timely file a statement of disputed facts, states that they were two of several insurance companies to whom Defendants submitted annuity applications using terminally-ill individuals as annuitants. (SUF ¶ 7, ECF No. 213.) Plaintiff's SUF incorporates the Statement of Facts that Defendants admitted as part of their respective plea agreements. (SUF ¶ 2; SUF Ex. B, ECF No. 213.) In the Statement of Facts, Defendants in fact admitted to "knowingly and willfully conspir[ing] with each other and with others to commit" mail fraud, wire fraud, and identity fraud, in violation of federal law. (SUF Ex. B 1.) Defendants also admitted that they "fraudulently obtained

6

millions of dollars by making . . . material misrepresentations and omissions to [] terminally-ill people . . . in order to obtain identity information and signatures for use in furtherance of the scheme . . . ." (Id. at 3.) It is also undisputed that (1) Plaintiffs were acknowledged as victims of Defendants' scheme; (2) Western Reserve Life Assurance Co. of Ohio ("WRL") is entitled to $1,102,464.28 in restitution; and (3) Transamerica Life Insurance Company is entitled to $805,926.18 in restitution. (SUF ¶ 15; SUF Ex. D 11.)

Rhode Island General Laws § 9-1-2 provides, in relevant part, that "[w]henever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in a civil action against the offender . . . ." The statute clearly enables Plaintiffs to recover the monetary damages incurred as a result of Caramadre and Radhakrishnan's conduct. This Court concludes that Caramadre and Radhakrishnan are civilly liable to Plaintiffs for the criminal conduct to which they admitted as part of the plea agreement. However, this claim represents only a portion of Count V, which broadly claims civil liability for several state and federal crimes and offenses allegedly perpetrated by five of the seven defendants. Plaintiffs are therefore entitled only to

7

judgment as a matter of law with respect to the civil liability of Caramadre and Radhakrishnan.

> 2. Plaintiffs' Claim for Violations of RICO as to Defendants Caramadre and Radhakrishnan

Plaintiffs argue that Defendants are liable for their individual violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. § 1962(c) and (d) and are therefore entitled to treble damages, costs of the lawsuit, and attorneys' fees pursuant to 18 U.S.C. § 1964(c) (Count IV).[3] (Pls.' Mem. 10.)  Four elements are required to prove a RICO claim pursuant to 18 U.S.C. § 1962(c): "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005) (quoting Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003)); see also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

---

[3]   18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The term "racketeering" covers many different types of misdeeds, but relevant to this case it expressly includes wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341). 18 U.S.C. § 1961(1). Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) . . . ."

'"Racketeering activity' means any act that violates one of the federal laws specified in the RICO statute, see 18 U.S.C. § 1961(1), including the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343." Id. A "pattern" is established by "[a]t least two acts of racketeering activity [occurring] within ten years of each other." Id. (citing § 1961(5)). "The Supreme Court has construed the pattern element as additionally requiring a showing that 'the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" Id. (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). An "enterprise" is defined as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

"For claims under § 1962(d), a plaintiff must show that each defendant in the RICO conspiracy case joined knowingly in the scheme and was involved himself, directly or indirectly, in the commission of at least two predicate acts." Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995) (quoting Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991)).

Here, there is no dispute that Defendants engaged in conduct that falls within the definition of "racketeering

activity" because they pled guilty to one count of wire fraud, and one count of conspiracy to commit wire fraud, mail fraud, and identity theft, <u>United States v. Caramadre</u>, 807 F.3d 359, 365 (1st Cir. 2015), and admitted to a statement of facts that included wire and mail fraud activity (SUF ¶ 2, Ex. B). <u>See</u> 18 U.S.C. § 1961(1). There is also no dispute that Caramadre and Radhakrishnan engaged in a pattern of this racketeering activity because Radhakrishnan joined Caramadre's existing scheme in 2007 and admitted to engaging in racketeering conduct through 2010 (SUF ¶ 6). <u>See</u> 18 U.S.C. § 1961(5). This Court finds, therefore, that Defendants Caramadre and Radhakrishnan are liable for their respective violations of RICO pursuant to 18 U.S.C. § 1962(c) and (d).

Similar to Count V of the Consolidated Complaint, however, Plaintiffs' Motion for Partial Summary Judgment represents only a portion of Count IV, which broadly claims RICO violations for five of the seven defendants. Because Plaintiffs' SUF only asserted facts relevant to Caramadre and Radhakrishnan, they are only entitled to judgment as a matter of law on Count IV of the Consolidated Complaint with respect to Defendants Caramadre and Radhakrishnan.

3. Plaintiffs' Claim for Reverse Piercing/Alter Ego

Plaintiffs argue that they may reach the assets of ADM through Caramadre as a matter of law through a reverse piercing of the corporate veil (Count XIII) because there is no dispute that ADM is the alter ego of Caramadre. (Pls.' Mem. 13-15.)  The Rhode Island Supreme Court has held that a corporate form may be disregarded and liability "determined by justice and fairness" when circumstances reveal "such a unity of interest and ownership between the corporation and its owner . . . such that their separate identities and personalities no longer exist." Nat'l Hotel Assocs. ex rel. M.E. Venture Mgmt., Inc. v. O. Ahlborg & Sons, Inc., 827 A.2d 646, 652 (R.I. 2003).  Similarly, the "equitable alter ego doctrine" may be invoked when there is:

> (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

Heflin v. Koszela, 774 A.2d 25, 30 (R.I. 2001) (quoting Transamerica Cash Reserve, Inc. v. Dixie Power and Water, Inc., 789 P.2d 24, 26 (Utah 1990)).  The second element is "addressed to the conscience of the court, and the circumstances under which it will be met will vary with each case," but "it must be shown that the corporation itself played a role in the

11

inequitable conduct at issue." Id. (quoting Transamerica, 789 P.2d at 26).

It is undisputed that ADM is a Rhode Island limited liability company and that Caramadre is the sole member of ADM, (Consolidated Compl. ¶ 6, ECF No. 186; Caramadre Ans. ¶ 6, ECF No. 197; ADM Ans. ¶ 6, ECF No. 200; SUF ¶ 19), that ADM's only asset is an annuity that was purchased as part of Caramadre's scheme (SUF ¶¶ 22, 24, 27-28), and that Caramadre used ADM as the owner and beneficiary of one of the annuities purchased through Caramadre's scheme (SUF ¶ 22). This Court finds that there is no dispute that ADM's corporate form played a role in Caramadre's perpetration of his scheme to defraud Plaintiffs, and that ADM is an alter ego of Caramadre as a matter of law. See Heflin, 774 A.2d at 30. This Court will therefore disregard ADM's corporate form and allow Plaintiffs to reach the assets held by ADM through any liability imputed to Caramadre. See Nat'l Hotel Assocs., 827 A.2d at 652.

4. Counterclaims for Breach of Contract

Both ADM and Caramadre have asserted counterclaims for breach of contract against WRL. ADM claims that WRL "unilaterally rescinded" an annuity policy contract, and, as a result, ADM has been both unable to submit a death claim and unable to control the funds in the annuity account. (ADM

Counterclaim ¶¶ 32-34, ECF No. 200.) Plaintiffs argue that ADM's claim fails because it has yet to submit a death benefit claim (a condition precedent to the payment of the death proceeds pursuant to the annuity policy) and because ADM has not suffered any damages (a required element for the breach of contract claim). (Pls.' Mem. 15, 18.)

"To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (footnote omitted) (citing Petrarca v. Fid. & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005)).

In the SUF, Plaintiffs assert that WRL issued the Charles Buckman annuity in reliance upon the representations made in the Charles Buckman Application. (SUF ¶ 24.) Plaintiffs attached a copy of this policy to the SUF. Section 10 of the policy covers the "death proceeds," and specifically states that when WRL "has due proof that the Annuitant died before the Commencement Date, the death proceeds are payable to the beneficiary." (SUF Ex. E 15.) Plaintiffs also assert that ADM has not submitted a death claim for the Charles Buckman annuity (SUF ¶ 25); they argue that WRL cannot be in breach of the annuity contract because

13

their contractual obligation to pay the death benefit has not yet been triggered.  In addition, ADM stated in a motion for enlargement of time to submit a response to Plaintiffs' motion for prejudgment attachment that it had just received the documents it needed to file a death claim, which indicates that it had not yet attempted to retrieve this benefit. (ECF No. 196.)  This Court finds that there is no indication that ADM has attempted to receive the death benefit from WRL and that there is no other evidence on record at this time to indicate that WRL has breached the annuity contract.

Plaintiffs also assert that WRL attempted to return all of the premiums that ADM paid for the Charles Buckman annuity. (SUF ¶ 26.)  To support their assertion, Plaintiffs attached a letter from WRL to Caramadre (as manager of ADM) that attempted to rescind the annuity policy in part by enclosing a check for $1,000,000 (representing all of the premiums that ADM had paid for the annuity policy). (SUF Ex. F.)  Plaintiffs contend that "ADM consciously rejected this opportunity" (Pls.' Mem. 18), and there is no evidence to the contrary.  The Court finds, therefore, that there is no evidence on the record to indicate that WRL has suffered any damages from any alleged breach of the annuity policy.

14

Caramadre makes the same breach of contract claim in his counterclaim, purportedly on behalf of "[his] limited liability company." (Caramadre Counterclaim ¶¶ 28-30, ECF No. 197.) As Plaintiffs argue, Caramadre's claim fails because there is no dispute that Caramadre is not a party to the annuity contract and therefore does not have a contractual relationship with WRL. (Pls.' Mem. 28-29.) Caramadre does not have any contractual rights with respect to the Charles Buckman annuity and cannot bring any claims against WRL with respect to this annuity. See Brough v. Foley, 525 A.2d 919, 922 (R.I. 1987). Plaintiffs are therefore entitled to summary judgment in their favor on both ADM and Caramadre's counterclaims for breach of contract.

5. Counterclaims for Promissory Estoppel

ADM and Caramadre have also asserted counterclaims against WRL for promissory estoppel. ADM claims that WRL has breached its promises (1) to pay a death benefit upon the filing of a death claim and (2) that ADM would have control over the investment of its premiums through the life of the annuity contract. (ADM Counterclaim ¶¶ 37-39.) Caramadre makes the same allegations in his counterclaim, purportedly on behalf of his limited liability company. (Caramadre Counterclaim ¶¶ 33-35.)

Plaintiffs argue that this counterclaim is simply a repackaged breach of contract claim, and that it should be

15

dismissed because ADM was an instrumentality of Caramadre's criminal acts and Caramadre approaches his claims with unclean hands. (Pls.' Mem. 19-22.)  Plaintiffs also argue that ADM may not prevail on this claim because an enforceable contract exists between the parties. (Id. at 19-20.)

In Rhode Island, the elements of promissory estoppel are as follows: "1. A clear and unambiguous promise; 2. Reasonable and justifiable reliance upon the promise; and 3. Detriment to the promisee, caused by his or her reliance on the promise." Cote v. Aiello, 148 A.3d 537, 547 (R.I. 2016) (quoting Filippi v. Filippi, 818 A.2d 608, 626 (R.I. 2003)).  The Rhode Island Supreme Court first embraced the theory of promissory estoppel "as a substitute for a consideration, rendering a gratuitous promise enforceable as a contract" such that "the acts of reliance by the promisee to his detriment (provide) a substitute for consideration." Hayes v. Plantations Steel Co., 438 A.2d 1091, 1095-96 (R.I. 1982) (quoting East Providence Credit Union v. Geremia, 239 A.2d 725, 727 (R.I. 1968)).  Putting any arguments aside about whether any factual disputes exist regarding the elements of promissory estoppel, this equitable theory is simply inapplicable to the dispute between the parties because there is no failure of consideration.  ADM paid WRL for the annuity policy.  And, as discussed supra regarding ADM's

16

breach of contract claim, there is no dispute on the record that ADM has either submitted the required paperwork for the death benefit claim or been denied this benefit of the annuity policy. ADM's counterclaim for promissory estoppel is, therefore, dismissed as a matter of law.

Plaintiffs also argue that Caramadre cannot pursue this counterclaim for the same reasons that he could not prevail on his counterclaim for breach of contract; the agreement at issue was between ADM and WRL and not between Caramadre and WRL. (Pls.' Mem. 30.) Plaintiffs argue that this counterclaim must be dismissed because Caramadre has not alleged that WRL made any promises to him and because Caramadre's unclean hands would preclude recovery pursuant to the equitable remedy of promissory estoppel. (Id.) Because Caramadre has not alleged any promises made to him by WRL, this Court concludes that this counterclaim may be dismissed as a matter of law.

### 6. Counterclaims for Breach of Duty of Good Faith and Fair Dealing

ADM and Caramadre have also asserted counterclaims against WRL for its alleged breach of the duty of good faith and fair dealing. ADM claims that WRL's attempt to rescind the annuity policy despite knowing that the annuity contract was not subject to any insurable interest requirement and was incontestable from its inception constitutes a breach of the implied contractual

17

duty of good faith and fair dealing. (ADM Counterclaim ¶ 45.) Caramadre makes the identical allegations, ostensibly on behalf of ADM. (Caramadre Counterclaim ¶ 40.)

Plaintiffs argue that Defendants cannot recover on this claim as a separate cause of action, and reiterate that WRL has not breached the annuity policy contract. (Pls.' Mem. 22-23.) Plaintiffs also argue that, because Caramadre is not a party to the annuity policy contract, his counterclaim must fail as a matter of law.

It is well-settled in Rhode Island that "[v]irtually every contract contains an implied covenant of good faith and fair dealing between the parties . . . [to] ensure[] that contractual objectives may be achieved," and that "a claim for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract." McNulty v. Chip, 116 A.3d 173, 185 (R.I. 2015) (internal quotations and citations omitted). These counterclaims are therefore dismissed as a matter of law.

### 7. Counterclaims for Declaratory Judgment

ADM and Caramadre have also included a vague counterclaim requesting that this Court "enter a judgment declaring the rights and other legal relations of the parties." (ADM

Counterclaim ¶ 29; Caramadre Counterclaim ¶ 25.)   Plaintiffs argue that, without any context to support these claims, neither Defendant is entitled to a declaratory judgment. (Pls.' Mem. 25.)   The Declaratory Judgment Act "is designed to enable litigants to clarify legal rights and obligations before acting upon them." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).   In addition, the Declaratory Judgment Act "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." Id. (quoting El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992)).   The Court "ultimately must determine when declaratory judgments are appropriate and when they are not." Id.

Rule 57 of the Federal Rules of Civil Procedure governs the procedure for obtaining a declaratory judgment pursuant to 28 U.S.C. § 2201.   The Advisory Committee Notes provide that a court may decline to grant declaratory relief when it "will not be effective in settling the controversy."   The Notes also provide that the "demand for relief shall state with precision the declaratory relief, cumulatively or in the alternative." The Defendants' vague request that this Court determine the "rights and other legal relations of the parties" does not specify the manner of relief sought with any measure of

19

precision, and this Court declines Defendants' invitation to make such a broad determination. There is also no doubt that any attempt by this Court to declare the legal rights of the parties would not "be effective in settling the controversy." See Fed. R. Civ. P. 57 Advisory Committee Notes. These counterclaims are, therefore, dismissed.

> 8. Counterclaim for Negligent Infliction of Emotional Distress

Caramadre claims that he is suffering severe emotional distress caused by WRL's "outrageous" action of attempting to rescind a valid and incontestable contract. (Counterclaim ¶¶ 43, 45, ECF No. 197.) Plaintiffs argue that this counterclaim must fail because Caramadre is not within the class of plaintiffs who are recognized in Rhode Island as able to recover under this theory of liability. (Pls.' Mem. 32.) Rhode Island common law is clear that "[o]nly two groups of plaintiffs are able . . . to seek recovery under a theory of negligent infliction of emotional distress: 'those within the "zone-of-danger" who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim whom they witness being injured.'" Perrotti v. Gonicberg, 877 A.2d 631, 636 (R.I. 2005) (quoting Jalowy v. Friendly Home, Inc., 818 A.2d 698, 710 (R.I. 2003)). Caramadre has not alleged that he was either physically endangered by Plaintiffs' actions or a bystander who is related

20

to a victim.  He is therefore not within the class of individuals who could potentially prevail on this type of claim. Plaintiffs are therefore entitled to judgment in their favor on this counterclaim.

C. Motion for Prejudgment Attachment and Preliminary Injunction

Plaintiffs are requesting a prejudgment order of attachment of Caramadre's assets, including his membership interest in ADM. (Mot. for Prej. Attach. And Prelim. Inj. 1, ECF No. 187.) Plaintiffs argue that they will probably obtain a judgment against Caramadre because many of the counts alleged in the Consolidated Complaint (such as civil liability for criminal acts, civil conspiracy to commit fraud, and unjust enrichment) "are effectively proven as a result of Caramadre's plea agreement," which included a statement of facts to which Caramadre and his co-defendant stipulated. (Mem. in Supp. of Mot. ("Attachment Mem.") 6, 8, 10, 12, ECF No. 187; Attachment Mem. Ex. 6, ECF No. 187-6.) Plaintiffs also argue that there is a need to furnish security to them because Caramadre will not likely have the financial means to satisfy a judgment, and between Plaintiffs' actual losses to Caramadre's scheme, treble damages, attorneys' fees, and prejudgment interest, Plaintiffs foresee a judgment in their favor that exceeds $10 million. (Attachment Mem. 13-15.)  Plaintiffs believe that Caramadre's

financial interest in ADM and the ADM annuity may be "the only source of revenue to satisfy a judgment" in Plaintiffs' favor. (Id. at 14.)   In support of their motion, Plaintiffs filed a declaration from a Senior Director of Operations for WRL, who attested to the administrative process of the Charles Buckman annuity and attached a chart detailing the "policy losses" that total approximately $2.7 million. (Vorhies Decl. Ex. D, ECF No. 187-4.)   Plaintiffs also filed documents supporting their contention that Caramadre has admitted to facts that lead to the likelihood of Plaintiffs' success on many of their claims. (See generally Exs. to Attachment Mem.)

In his opposition to the motion, Caramadre asserts that Rhode Island's statutory framework for prejudgment attachment is clear that attachment may not apply to tort actions against in-state residents.   Caramadre contends that, despite his incarceration in a federal prison located in Massachusetts, he remains a Rhode Island resident and that Plaintiffs' claims against him (conspiracy, RICO, civil liability for crimes and offenses and unjust enrichment) sound in tort. (Opp'n 1-2, ECF No. 203-1.)[4]

---

[4] ADM joined Caramadre's memorandum in opposition (ECF No. 202).   Plaintiffs claim in their reply memorandum that ADM cannot join Caramadre and failed to properly adopt Caramadre's arguments. (Reply Mem. 5, ECF No. 209.)

In response, Plaintiffs assert that Caramadre is currently a resident of Massachusetts, not Rhode Island, and that irrespective of the statute governing attachment for tort claims against nonresident defendants, § 10-5-5 allows attachment in any civil action of equitable character, and Plaintiffs have included a count for unjust enrichment against him in the Consolidated Complaint. (Reply Mem. 1-3, ECF No. 209.)

Rule 64 of the Federal Rules of Civil Procedure provides, in relevant part that, absent an applicable federal statute, state law may be used to seize property "to secure satisfaction of the potential judgment." In Rhode Island, a plaintiff may move for a writ of attachment to run against the property of any defendant "in any civil action of an equitable character." R.I. Gen. Laws § 10-5-5. Before the Court grants such a motion, however, it must hold a hearing.

> A court having jurisdiction over a defendant or his or her assets, including his or her personal estate or real estate, may authorize a plaintiff to attach the defendant's assets, or any part thereof, <u>after hearing on a motion to attach</u>, notice of which has been given to the defendant as provided in this section.

R.I. Gen. Laws § 10-5-2(a) (emphasis added); <u>see also</u> <u>Hatch v. O'Brien</u>, 772 F. Supp. 1326, 1328 (D.R.I. 1991) (acknowledging the notice and hearing requirement that the General Assembly inserted to § 10-5-2 in 1973).

23

The Rhode Island Supreme Court is clear that prejudgment attachment is not available in tort actions involving defendants who are Rhode Island residents, but may be available in a contract action if the damages "are susceptible of estimation and determination under the ordinary and well-understood commercial and business rules which apply to contracts proper," or in a tort action involving an out-of-state resident. Martin v. Lincoln Bar, Inc., 622 A.2d 464, 468 (R.I. 1993) (quoting United States v. J. Tirocchi & Sons, Inc., 180 F. Supp. 645, 650 (D.R.I. 1960)).

Plaintiffs are also moving for a preliminary injunction to enjoin Caramadre from moving any of ADM's assets or transferring his interest therein. (Attachment Mem. 3.) Plaintiffs acknowledge that the "Supreme Court has held that federal courts lack authority to issue preliminary injunctions to prevent dissipation of assets pending adjudication of purely legal claims," but argue that this does not apply to equitable claims, such as unjust enrichment (which has been asserted in the Consolidated Complaint against Caramadre, as well as against five other defendants). (Attachment Mem. 15 n.7 (citing Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308 (1999).) Plaintiffs assert that they are likely to succeed on the merits of their claims, and that Caramadre's presumed

inability to satisfy a judgment constitutes irreparable harm such that he should be enjoined from transferring his interest in ADM's assets.   Caramadre counterargues that Plaintiffs have not met any of the four required elements for the issuance of a preliminary injunction with respect to the claim for unjust enrichment, the only equitable claim in the Consolidated Complaint.

The Court is ultimately concerned that circumstances may have changed with respect to the status of Caramadre's assets since this motion for prejudgment attachment was filed, and that the Court may not have accurate, current information with respect to the status of his assets.   The Court therefore orders as follows: If Plaintiffs wish to press this motion in light of the decision rendered today on Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs are directed to file a supplemental memorandum in support of its motion within 60 days of today's date.   Pursuant to R.I. Gen. Laws § 10-5-2(a), the Court will then schedule a hearing forthwith.

III. Conclusion

Defendants' Motion to Reconsider the Court's July 12, 2016 Order (ECF No. 227) is DENIED.   Plaintiffs' Motion for Partial Summary Judgment (ECF No. 212) is GRANTED in its entirety.   No judgment shall enter at this time, however, because several

counts of the Consolidated Complaint remain to be litigated. Plaintiffs' Motion for Prejudgment Attachment and Preliminary Injunction (ECF No. 187) is deferred until Plaintiffs file a supplemental memorandum, if any.   If Plaintiffs do not file a supplemental memorandum within 60 days, then the Court will dismiss the motion without prejudice.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date: February 27, 2017